Good morning, Your Honors. Pat Jordan, representing MEDIC. May it please the Court. Collective bargaining parties, such as those before you, are no different than any other contracting parties. They are free, with limited restrictions, to negotiate upon and agree upon terms and conditions of a collective bargaining agreement. A mandatory subject of bargaining in my business includes grievance procedures, includes an ADR system, which in this case is the arbitration provision. There is nothing in federal law, or anywhere so far as I can tell, that requires an employer to arbitrate the discharge of an employer, of an employee. If an employer agrees to enter into a collective bargaining agreement that contains an arbitration provision, so be it. But for many years, and even now, there are employers who lawfully say, I choose not to arbitrate the termination of an employee. If you, the union, wish to go another route, you are free to do so, in order to protest that or claim that somehow it violates some statute. Here, we have a situation where the employer said, somewhat grudgingly, I will agree to arbitrate the termination of employees, but I wish to condition that on certain elements. And fundamentally, an employer is entitled to assert those restrictions or conditions precedent before there is a remedy. It is perfectly lawful for an employer and a union, as they did here, to negotiate upon what will the remedy be in the event of a discharge. And here, the parties specifically agreed that... You're suggesting that the three months back pay was sort of a liquidated damages provision. That's correct, precisely. Which is exactly what the employer had agreed to with the predecessor union. And except for changing $5,000 to three months' pay, Your Honor, the language remained as is. And as it was read and enforced by John Cagle, who's been in the business probably longer than I have, he said, look, this may be unusual. I may not have agreed to it if I was at the table representing the union, but I'm not a negotiator. I'm here as an arbitrator to determine what is the plain meaning of the contract. He found the plain meaning of the contract, which I think really can't be in dispute. Although it's certainly... I'm sorry, go ahead. But, I mean, the Cagle award was in a completely different parties. Excuse me? The Cagle award involved completely different parties. It involved a different union, but not the same employer and the same language. I don't rely upon John's decision. I'm saying... I mean, arbitration awards typically are thought to be kind of, aren't they typically thought to involve kind of a life process? In other words, they're thought to involve more than just individual claimants, but involve a relationship between the contracting parties that extends beyond particular grievances. Sometimes. Many times, no. The specific grievance here was whether or not, or the dispute before us now is whether the arbitrator could rewrite the agreement and say because she found that there wasn't cause for the termination, ipso facto, there had to be reinstatement and full back pay. She wasn't saying that she was rewriting the agreement. What she was saying was that if you guarantee people that they have a job unless they are fired for cause, it seems pretty ironic that you could just buy them off by just paying three months liquidated damages if you're wrong. Precisely, but that's what the parties agreed to. That's not really a job for which you have tenure. Well, the problem with that, Your Honor, is she can say she's mortified by it. She can say she's flabbergasted by it. She can say she's surprised by it. But the reality is that's what the parties agreed to. But isn't the policy really to keep courts out of it? I mean, isn't the policy really good decision, bad decision, you buy the decision of the arbitrator? Oh, I agree with you completely. And 24 years ago, Your Honor, I made exactly that same argument in the United Markets case. And I'm back saying that the United Markets case was correctly decided. United Markets case, I argued, maybe eloquently, but I didn't win, that the arbitrator had the capacity to frame a remedy once he found that there was a violation of the contract. I argued that the remedy framed by the arbitrator was within the four corners of the agreement. This court had absolutely no trouble in saying to me, Mr. Jordan, the language of the contract is specific. It's express. If your client violates the agreement, you lose the capacity to use that lower-rated wage classification for the life of the agreement. Here, the parties have specifically agreed, no reinstatement, and you're limited to three months back pay. Let's assume that the arbitrator had concluded that the employer had suspended Sponsler for four months instead of three months. Four months. I submit to you that the arbitrator would have had no authority to say to the employer, you've now got to pay four months, even though the contract says three months. If she had found that there was absolutely no violation by Mr. Sponsler, no problem with his conduct, she could not have gone beyond the clear words of the contract to impose a remedy different than what the parties had already agreed to. The problem, I mean, it's a really interesting problem, and I have to say that I find the CBA fairly ambiguous. The problem is, is that we've always interpreted termination for cause to mean that you get reinstatement if you weren't terminated with cause. I mean, that's just across government agencies. That's across other situations. So when you use that term for cause, it means something to us. Well, I can understand that it does. The problem is, you see, the parties said, but while you have to have cause for termination, here's the penalty that's imposed. And then you have the right to negotiate upon the penalties, just as you have had the right in any contractual circumstance to say here's your liquidated damages. That's precisely what they said here. But it's not so clear. I'm not sure. Oh, I think it's abundantly clear. It would be a whole lot clearer if the remedy had been put in 901 where you have the termination for cause provision. But it's found elsewhere in the CBA. Well, the problem is, Your Honor, is that it's not surprising in the grievance procedure language, and I've negotiated hundreds of these things, to find a limitation on remedy or a limitation on an arbitrator's authority or a language as to, by the way, who's going to pay for the arbitrator if you lose. Maybe you split. Maybe the loser pays. There's all kinds of permutations that the parties are free to contract about. That's exactly what they did here. This employer said, I really don't want to arbitrate discharge cases. That's clear. But it did say, I'm willing to do so if, one, I don't have to bring the person back even if I lose, and, two, I'm going to pay three months back pay. And the union took the deal and now says, wait a minute. You agreed to just cause. Those are mutually inconsistent. They're not mutually exclusive, Your Honors. And I'd like to reserve a little bit of time for rebuttal, if I may. Thank you. Mr. Talbot. Good morning, Your Honors. Timothy K. Talbot for the National EMS Association. I think I'd like to begin with the premise that the language is anything but plain, clear, unambiguous. And I think once you establish, as in this case, the arbitrator found inherent conflict between the just cause provisions in one article of the contract and its purported liability, which is how it's termed, liability clause, which, if you read it in the context of the arbitration provision, arguably would apply to any great grievance of any nature under the contract. This Court is simply to look at whether the arbitrator interpreted the contract language and sought to find a remedy. And in this case, her decision plainly states that she was, in fact, interpreting the contract and applying the provisions. In the first portion of her analysis, she acknowledges at the inception that there is a provision in the contract that limits her ability to add to, modify or delete from the contract. Let's suppose that I agreed with your basic premise about what just cause means. What does 10.5 mean? I have really no idea. What I looked at there, as I said, it is worded as How can we construe the whole contract? How can the arbitrator construe the whole contract if you have no idea what it means and it appears then that you just want us to excise 10.05? Well, and I don't want you to excise 10.05, but I think You don't have any idea what it means, then we just rendered it sort of a nullity, haven't we? I don't think it – I look at what the arbitrator did in the Cagle case and I looked at what the court – or what the arbitrator did in our present case. And I think what they tried to do was interpret what happens if there is, in fact, a finding of cause for discipline. As in Cagle's case, he found that there was cause for discipline. He did not believe that termination was the appropriate remedy. In that case, he came back and he said – he initially wanted to impose a suspension, but in light of that language said I'm precluded from doing that and therefore upheld the termination. In our case, the arbitrator very clearly noted there was no misconduct here. Therefore, there was no basis for termination, and therefore, essentially from the inception, the action taken by the company is invalid. So if you look at what the arbitrator really said, and I admit that – and the courts have said the arbitrator is not required to be as specific and detailed in their decisions as might be expected in a judicial proceeding. But she did note what Cagle had found, that in a case where you have a termination that he reduces to a suspension, it might limit you because misconduct is found. But in a case where there isn't, then it, as she said, it seems unfathomable based upon her institutional knowledge and history that you would do it. So the way I interpret that case, and I believe the way it could be interpreted, is that if there is a finding of just cause for discipline, but an arbitrator seeks to insert their own decision as to the penalty, then perhaps it's a limitation. And I, too, as Mr. Jordan has, have negotiated many contracts. I didn't negotiate this language. But when we seek to do that, we're very clear. In a discipline case, the arbitrator shall not have authority to interject his or her judgment as to the propriety of a penalty when cause for discipline is found. This language in this contract doesn't contain that. And while we might even say he gave the example of a suspension, by his own example of the 3 months versus 4 months of the suspension, he has to drop off the without reinstatement language in his own interpretation of that clause, because reinstatement isn't at issue in that type of a situation, because if I'm suspended and I come back, I know I'm coming back. So through their own interpretation, they want to pick and choose what aspects of that provision apply. I give another example. There are contract wage increases called for. Say the company failed to give an increase for 6 months that was clearly due under the contract. The language in the grievance provision doesn't say it's limited to discipline cases. It has a remedy for the grievance. So how would it apply in a case of just a failure to provide a scheduled pay increase? The arbitrator in this case, she didn't ignore that language. She specifically dealt with it. And I think once you say it doesn't apply in wage failure cases or it doesn't apply fully in a suspension case, then it's up to the arbitrator to reconcile those provisions and identify when and how it will apply in the proper case. Once she does that, even if this Court thinks that that's incorrect, she has fulfilled her obligation under the submission of the parties to interpret the contract. And the Supreme Court and this Court in every case says even if you disagree with the arbitrator's interpretation, her attempt to reconcile those provisions, that's not your purview. The parties bargained for her decision and it has to be upheld. Here she interpreted the contract. The Hawaii Teamsters case clearly says as long as the arbitrator is arguably interpreting the contract, you can't do anything about it. Here she interpreted the contract. She noted that there was this tension between just cause when somebody is innocent, if you will, of the charges. And in that case, which are the facts here, she found that that provision would not preclude reinstatement and a make-whole remedy. It might be applied to limit, as Arbitrator Cagle did in another case. And I think that's how that is logically interpreted. And that's how her opinion, when I read it, lays that out. Roberts. Anything further? Nothing. Thank you. Thank you, Mr. Talbot. Mr. Jordan. Yes, Your Honor. Thank you. We did hire the arbitrator to resolve the dispute. And Mr. Talbot suggests that she engaged in some sort of interpretive effort. However, I think that's belied by the very words of her own award, in which she specifically states that it is unfathomable to her that anybody could agree that if you've agreed to a just cause standard, that the employee who is terminated without just cause shouldn't get something more than three months. That's not her job. She has been admonished by the collective bargaining agreement and the parties not to modify, add to, or delete from the agreement. By this Court's question, it is abundantly apparent that even counsel for the union must admit that in this case, the limitation was deleted and taken out of this agreement as applied by this arbitrator. Unless you have any questions, Your Honors, thank you very much. Thank you. We thank both counsel. That completes the oral argument calendar for today. The Court is adjourned.
judges: Gwin, Hug, Bybee